UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

GWENDOLYN ADAMS,

        Plaintiff,

v.                                             Case No. 18-C-846

ANDREW SAUL,
Commissioner of Social Security,

        Defendant.

## DECISION AND ORDER

Plaintiff Gwendolyn Adams commenced this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. Adams contends that the decision of the administrative law judge (ALJ) was erroneous in several respects, including: (1) failing to adequately explain the handling limitation in the residual functional capacity (RFC) determination; (2) noncompliance with Social Security Ruling (SSR) 16–3p when assessing Adams' reported pain and symptoms; (3) assigning great weight to irreconcilable opinions; and (4) noncompliance with SSR 83–12 for failing for determine whether the RFC reduces Adams' light exertional capacity. For the reasons provided below, the Commissioner's decision will be reversed and remanded.

## BACKGROUND

On November 14, 2012, Adams, then 49 years old, tripped over a piece of concrete while at a mall, leading to a displaced fracture of her left wrist and pain in her right knee. R. 18, 274, 537, 563. Adams filed an application for SSI on May 29, 2014, alleging disability beginning in

November 2012 due to left wrist and arm pain and right knee pain. R. 159, 199. After Adams' claim was denied initially on September 25, 2014 and upon reconsideration on March 26, 2015, she requested a hearing before an ALJ. R. 79, 88. ALJ Ramona L. Fernandez conducted a video hearing on May 8, 2017, during which Adams, who was represented by counsel, and a vocational expert (VE) testified.

At the time of the hearing, Adams was 54 years old and lived in an upper duplex with her fiancé. Adams testified that her last full-time work was in 2002 doing customer service, stocking, and ringing up customers, which required her to be on her feet all day and lift up to 40 pounds. R. 41–42. She left that job after about one and a half years because her supervisor refused to train her. R. 41, 43. Adams testified that she worked part-time for one and one half months in retail customer service in 2014 but left because her pain was overbearing. R. 40. When asked what limits her from working, Adams testified that she experiences tenderness, weakness, and pain, primarily in her left arm from her fingers to her shoulder and in right knee through her thigh. R. 43–44. Although Adams takes medication for her pain, she reduces the prescribed amount to avoid side effects. R. 45–46.

Regarding daily activities, Adams testified that her typical day is to rise in the morning and then go to a Lazy-Boy recliner, although she goes grocery shopping once or twice each month. R. 51. Adams' fiancé assists her with cleaning, cooking, and laundry, although Adams occasionally prepares her own meals. R. 45, 48–49. Adams testified that she usually showers each day but relies almost entirely on her dominant right hand to do so. R. 48. Adams wears splints for her knee and arm, but only when at home. R. 50. She has difficulty standing and walking around because she begins to experience pain and looks for a place to sit. R. 50–52. Adams is able to drive and she drove about thirty minutes to the hearing. R. 39. Although Adams tries to keep both hands on the steering wheel while driving, she has trouble using her left hand to turn. R. 50.

In a written decision dated June 2, 2017, the ALJ concluded that Adams was not disabled within the meaning of the Social Security Act since May 29, 2014, the date of her application. R. 24. To arrive at this conclusion, the ALJ followed the Social Security Administration's (SSA's) five-step sequential evaluation process. R. 14–15. At step one, the ALJ determined that Adams had not engaged in substantial gainful activity since May 29, 2014. R. 15. At step two, the ALJ found that Adams has the following severe impairments: status post open reduction and internal fixation of the left wrist; degenerative joint disease of the right knee; and complex regional pain syndrome of the left upper extremity. *Id.* At step three, the ALJ determined that Adams did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 16.

After considering the whole record, the ALJ found that Adams had the RFC to "perform light work as defined in 20 C.F.R. 416.967(b) except lifting a maximum of fifteen pounds; only occasionally climbing; no kneeling, crawling, use of ladders, ropes, or scaffolds; and only frequent handling and occasional fingering with the left (non-dominant) hand." *Id.* At step four, the ALJ determined that Adams is capable of performing past relevant work as a retail clerk. R. 22. Despite this step four determination, the ALJ made alternative findings at step five that there exist jobs in the national economy in significant numbers that Adams could perform, such as information clerk, order caller, and garment sorter. R. 23–24. Even were the RFC limited to a sedentary exertional level, the ALJ concluded that an individual with that RFC could perform work as a telephone solicitor, a position with significant numbers in the national economy. R. 24, 56. Based on these findings, the ALJ concluded that Adams was not disabled. R. 24. After the Appeals Council denied review and the ALJ's decision became final, Adams filed this action for judicial review.

3

**LEGAL STANDARD**

The Commissioner's decision will be upheld if the ALJ applied the correct legal standards and supported the decision with substantial evidence. 42 U.S.C. 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is "such relevant evidence as a reasonable mind could accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

Additionally, the ALJ is expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

**ANALYSIS**

Adams first contends that the ALJ erred in failing to adequately explain the handling limitation in the RFC determination. The RFC is the maximum that a claimant can do despite her physical and mental limitations. *See Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); SSR 96–8p). "The RFC assessment must include a narrative discussion

describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96–8p. The assessment must also address "both the remaining exertional and nonexertional capacities of the [claimant]." *Id.* Nonexertional capacity considers a claimant's manipulative (e.g. handling) abilities. *Id.* The SSA has explained that "handling (seizing, holding, grasping, turning or otherwise working primarily with the whole hand or hands) [is] required in almost all jobs" and "[s]ignificant limitations of . . . handling, therefore, may eliminate a large number of occupations a person could otherwise do." SSR 85–15; *see also Herrmann v. Colvin*, 772 F.3d 1110, 1112 (7th Cir. 2014).

Prior to step four, the ALJ determined that Adams had the RFC to perform light work with "only frequent handling and occasional fingering with the left (non-dominant) hand," among other limitations. R. 16. Adams contends that the ALJ offered no explanation for the disparate treatment of these two manipulative functions—handling and fingering—and failed to address relevant opinion evidence regarding handling limitations. Adams finds this failure especially significant because a limitation to occasional handling rather than "frequent handling," as the ALJ found, would preclude performance of the jobs cited by the VE on which the ALJ relies, including Adams' past work as a retail clerk. Adams notes that, under the Dictionary of Occupational Titles (DOT), the jobs of retail clerk (cited as DOT 279.357-054), information clerk, order caller, and garment sorter each require frequent handling, and the telephone solicitor job cited in the alternative requires frequent fingering, not occasional fingering, as the VE testified. *See* Dkt. Nos. 16-2, 26-1; DOT 279.357-054, 1991 WL 672548.

Though not wholly absent as Adams contends, the ALJ's explanation of the frequent handling RFC limitation is deficient. The ALJ noted that: Adams self-reports that "she has

5

problems with grasping and holding items or trying to pick up heavier items"; an occupational therapist's (OT's) March 2014 evaluation, to which the ALJ assigned great weight, reported that Adams' "grip strength was similarly quite lower in her left hand than her right, although her overall upper extremity strength was five out of five"; at the OT's evaluation, Adams reported having difficulty "gripping[ ] and handling small items"; and Adams' clinical examinations showed that "[h]er range of motion and muscle and grip strength were reduced in her wrist, but she generally did not show dystrophic skin changes." R. 17, 19–21. Aside from the RFC finding itself, the ALJ mentions handling once in a summation paragraph, stating that Adams "could only frequently perform handling and fingering with the left (non-dominant) hand in light of her reduced range of motion and pain in her wrist and knee." R. 22.

This cursory remark is insufficient. While it is true that "an ALJ need not address every piece of evidence in his decision," *Sims v. Barnhart*, 309 F.3d 424, 429 (7th Cir. 2002), the ALJ here failed to explain, with specific citations, how the evidence supports a limitation of frequent handling. SSR 96–8p. The ALJ's remark that Adams' handling and fingering limits are "in light of her reduced range of motion and pain in her wrist and knee" conflates the concepts of handling and fingering, which are distinct, *see id.*, and operates at too high a level of generality to adequately explain why these two manipulative abilities were treated differently, why handling is limited to frequent rather than occasional, or why, for that matter, knee pain is relevant to handling and fingering. The ALJ has therefore failed to provide a logical bridge between the evidence and his conclusion that Adams is limited to frequent handling. *See Clifford*, 227 F.3d at 872.

The Commissioner notes that the ALJ's fingering and handling limitations directly correspond to the March 2015 opinion of state agency medical consultant Dr. Ronald Shaw, who

opined that Adams was "[l]imited to frequent handling on left and occasional fingering on left due to effects of previous fracture and fusion." R. 75. Immediately prior to the summation paragraph, the ALJ states that "[s]ome weight is given to the residual functional capacity findings offered by the State agency medical consultants, but later evidence supports additional limitations that have been incorporated in the residual functional capacity herein." R. 22. Although the Commissioner is correct that the ALJ's RFC limitation corresponds to Dr. Shaw's opinion, the ALJ neither specifically cited Dr. Shaw's opinion nor explained why Dr. Shaw's handling and fingering conclusions were being adopted in light of other evidence in the record, including Adams' self-reported difficulties, the OT's evaluation (which was assigned great weight), and clinical examinations. R. 208, 355–56, 461, 468, 472, 688.

For example, despite assigning great weight to the opinion of Dr. Soliven Bautista, one of Adams' treating physicians, the ALJ failed to explain how Dr. Bautista's recommendation that Adams be restricted from "activities that require full grip strength" factored into the RFC determination of a handling limitation. R. 688; *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) ("It is not enough for the ALJ to address mere portions of a doctor's report." (citing *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2000))). The Seventh Circuit has recognized that "[g]ripping is a form of handling" and that despite having areas of strength and normal sensations, a claimant with poor grip strength may be precluded from work. *Herrmann*, 772 F.3d at 1112. The ALJ's statement that Adams' "reduced range of motion and pain in her wrist and knee" supported a frequent handling RFC limitation, aside from being insufficient on its own, failed to account for Adams' difficulties with left-hand grasping and grip strength. Failure to even mention these difficulties requires remand.

Obtaining an adequate explanation for the frequent handling RFC restriction is especially important because, as Adams notes, the difference between a restriction of occasional or frequent handling could be dispositive in this case, as the jobs of retail clerk (cited as DOT 279.357-054), information clerk, order caller, and garment sorter each require frequent handling, while telephone solicitor requires frequent fingering. *See* Dkt. No. 16-2 at 3, 7, 11; Dkt. No. 26-1 at 3; DOT 279.357-054, 1991 WL 672548. Regarding the telephone solicitor position, the ALJ failed to resolve the conflict between the VE's testimony that the job can be performed with occasional fingering and the DOT, which notes that the job involves frequent fingering. *See* R. 55–56; Dkt. No. 26-1 at 3. This failure not only contravenes SSR 00–4p, which provides that "[w]hen there is an apparent unresolved conflict between VE or [Vocational Specialist] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the [testimony]," but also means that the ALJ's error with respect to the handling RFC restriction is not harmless.

Because the court's conclusion that the ALJ failed to build a logical bridge in support of the handling limitation in the RFC is alone sufficient to warrant remand, the court need not address the other issues Adams' raises for review.

**CONCLUSION**

For the foregoing reasons, the Commissioner's decision is **REVERSED** and **REMANDED** to the SSA pursuant to 42 U.S.C. § 405(g) (sentence four) for further proceedings consistent with this order. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** this   16th   day of September, 2019.

s/ William C. Griesbach  
William C. Griesbach, Chief Judge  
United States District Court